UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**MAURICE L. PURTTY**,                    Case Number 1:13 CV 1204

     Plaintiff,                    Judge Dan Aaron Polster

     v.                    REPORT AND RECOMMENDATION

**COMMISSIONER OF SOCIAL SECURITY**,

     Defendant.                    Magistrate Judge James R. Knepp II

### INTRODUCTION

Plaintiff Maurice L. Purtty filed a Complaint (Doc. 1) against the Commissioner of Social Security seeking judicial review of the Commissioner's decision to deny supplemental security income (SSI) and disability insurance benefits (DIB). The district court has jurisdiction under 42 U.S.C. § 1383(c)(3) and 405(g). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(1). (Non-document entry dated May 30, 2013). For the reasons stated below, the undersigned recommends the Commissioner's decision be affirmed.

### PROCEDURAL BACKGROUND

On June 10, 2009, and November 22, 2010, Plaintiff filed applications for DIB and SSI, claiming he was disabled due to constant back pain, diabetes, blurred vision, and chronic pain in his arms and legs. (Tr. 145-46, 157-62, 212). He alleged a disability onset date beginning February 1, 2009. (Tr. 145-46, 157-62). His DIB claim was denied initially and on reconsideration (Tr. 91-93, 145-46); the record does not contain a determination on Plaintiff's SSI claim. (Tr. 11). Plaintiff requested a hearing before an administrative law judge (ALJ). (Tr.

8). On April 13, 2011, Plaintiff appeared at the hearing, after which the ALJ determined additional medical evidence would be necessary to decide Plaintiff's case. (Tr. 62-71). Plaintiff (represented by counsel) and a vocational expert (VE) testified at a second hearing, after which the ALJ concluded Plaintiff could perform a range of sedentary work and, thus, was not disabled within the meaning of the Act. (*See* Tr. 8-22, 16). The Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1); 20 C.F.R. §§ 404.955, 404.981, 416.1455, 416.1481. On May 30, 2013, Plaintiff filed the instant case. (Doc. 1).

FACTUAL BACKGROUND

## Personal and Vocational History

Plaintiff was 34 years old at the time of the ALJ hearing and lived with him mom and brother. (Tr. 20, 41). He attended school through the 11th grade and worked for the Postal Service for fourteen years, where he was a mail clerk and sorter until he was laid off in 2009. (Tr. 34-36, 213). Subsequently, Plaintiff was a "floater" at a temporary agency, where he worked at a cleaning company and unloaded trucks until September 2009. (Tr. 36-37). When asked why he stopped working, Plaintiff said, "[t]hey had laid me off from the Post Office and I couldn't find further work." (Tr. 37). However, Plaintiff added he could not return to work because of chronic back pain and leg cramps. (Tr. 37). Plaintiff also testified he had uncontrolled diabetes. (Tr. 37-40).

Despite his impairments, Plaintiff could wash dishes, cook, clean, shop, and perform light yard work, such as raking leaves. (Tr. 335, 411, 413-14). Concerning daily activity, Plaintiff reported he maintained self-care, ate breakfast, watched television, read, watched more television, then went to bed. (Tr. 241).

2

**Medical Evidence**[1]

Despite the ALJ's procurement of additional medical evidence, the record is sparse concerning treatment for Plaintiff's impairments. (Tr. 17).

In 2006 and 2007, reports from Franklin D. Krause, M.D., showed Plaintiff had a history of insulin dependent diabetes, without retinopathy or neuropathy, and an ongoing diet resulting in a 180 pound weight loss. (Tr. 305-06, 314-15). Dr. Krause noted Plaintiff "stopped work because he was laid off, rather than for any medical reason." (Tr. 315). His gait and functioning abilities were normal. (Tr. 314-19).

In 2011, Plaintiff treated at Care Alliance for diabetes management and post-surgical care after drainage of a neck abscess. (Tr. 406-27, 457-67). On September 7, 2011, Plaintiff was well-developed and well-nourished with no blurred vision. (Tr. 406-08). Plaintiff reported he was diagnosed with diabetes in 2004 but had not taken insulin for a year and a half due to the loss of his job and lack of insurance. (Tr. 407, 411). Plaintiff was diagnosed with diabetes mellitus without complication and given insulin on release. (Tr. 408).

Plaintiff returned for a diabetes follow-up the following week and reported no symptoms. (Tr. 411). He also stated he "shares cooking/grocery shopping responsibilities with [his] Mom." (Tr. 411). In addition, he said he had not exercised lately due to a neck abscess but "usually work[ed] out daily." (Tr. 411). Despite complaints of foot swelling and calluses, Plaintiff missed a scheduled appointment with podiatry. (Tr. 457-67). On September 23, 2011, Plaintiff admitted he was not taking his diabetes medication as prescribed because he believed it was too much

---

1. Despite this Court's Order requiring a Fact Section, Plaintiff failed to include one. (Doc. 6). To reiterate, a plaintiff's brief on the merits must include a Fact Section containing "[a]ll facts relevant to the legal issues" with citation to the "exact and specific transcript page number . . . relating to these facts." (Doc. 6).

insulin. (Tr. 415). In November 2011, his last appointment on record, Plaintiff was described as having diabetes mellitus, without complication. (Tr. 465).

**Opinion Evidence**

On August 13, 2009, Plaintiff saw Eulogio Sioson, M.D., for a one-time disability evaluation. (Tr. 335-39). Plaintiff said he had not been able to work since February 2009 because of his medical problems, which included diabetes mellitus and neck, back, and joint pains. (Tr. 335). On examination, Plaintiff walked normally with no assistive device, was able to perform heel/toe walking, and was able to get up and down from the examination table without incident. (Tr. 336). He had back pain when rising from a ¼ squat, mild knee tenderness, and minimal neck and back tenderness. (Tr. 336). Manual muscle testing was normal, he had no muscle atrophy, he was able to grasp and manipulate with each hand, and straight leg raising was negative. (Tr. 336). Dr. Sioson's impression was diabetes mellitus, with near normal uncorrected vision and probable peripheral neuropathy using nylon filament; neck/back/joint pain with no apparent radiculopathy; and chest pain, atypical of unclear etiology. (Tr. 336). Dr. Sioson concluded, based on objective findings, Plaintiff had no specific restriction to work-related activities but if considering range of motion from pain, work-related functions such as walking, standing, sitting, carrying, and lifting would be impaired and limited to sedentary activities. (Tr. 336).

On October 12, 2009, state agency physician Eli Perencevich, D.O., completed a Physical Residual Functional Capacity (RFC) form. (Tr. 342-49). Dr. Perencevich found Plaintiff could lift twenty pounds occasionally and ten pounds frequently; stand, walk, and sit about six hours in an eight-hour workday; and occasionally climb ladders, ropes, and scaffolds. (Tr. 343-44). On April 4, 2010, W. Jerry McCloud, M.D., affirmed Dr. Perencevich's RFC assessment as written. (Tr. 350).

4

On May 26, 2010, Plaintiff saw Michael B. Leach, Ph.D., for a mental health consultative examination. (Tr. 352-57). Plaintiff said he lived with his mother and financially supported himself with unemployment and welfare. (Tr. 352). Plaintiff indicated he was not currently looking for employment because his "back and legs [were] sore and weak all the time, and [he] c[ouldn't] stand for long periods of time." (Tr. 353). Plaintiff denied depression but said he felt stressed and worried about his health and ability to purchase insulin. (Tr. 353). On examination, Plaintiff had a good appearance, answered all questions, and was cooperative. (Tr. 354). He presented as generally withdrawn, depressed, and anxious. (Tr. 354). Dr. Leach diagnosed adjustment disorder with mixed anxiety and depressed mood, and assigned a Global Assessment of Functioning (GAF) rating of 60, indicating moderate symptoms. (Tr. 354). Dr. Leach concluded Plaintiff had moderate limitations in his abilities to understand, remember, and follow instructions; maintain attention, concentration, persistence, and pace to perform simple, repetitive tasks; and withstand stress and pressure associated with day-to-day work activity. (Tr. 356).

On June 28, 2010, state agency psychologist Leslie Rudy, Ph.D., completed a mental RFC assessment. (Tr. 358-61). Dr. Rudy found Plaintiff could perform simple, repetitive multi-step tasks in a setting without demands for fast pace, high production, or frequent changes in assigned tasks. (Tr. 360). Plaintiff could interact appropriately but would not tolerate demands for sustained interactions with the general public or cooperative interactions with co-workers. (Tr. 360). He could adapt to occasional routine changes. (Tr. 360).

On June 2, 2011, state agency physician Dorothy A. Bradford, M.D., performed a consultative examination. (Tr. 389-96). Plaintiff's chief complaints were diabetes, back pain, and blurred vision. (Tr. 393). Muscle testing revealed normal strength, range of motion, grasp,

manipulation and fine coordination in his cervical spine, legs, shoulders, wrists, hips, ankles, knees, feet, elbows, and fingers. (Tr. 389-92). No muscle atrophy was present. (Tr. 390). Plaintiff's overall appearance, station, gait, and posture were normal. (Tr. 394-95). Dr. Bradford assessed insulin dependent diabetes, poorly controlled due to lack of health insurance; diabetic peripheral neuropathy bilateral in the hands and feet; night sweats of unknown etiology; and lumbar sprain. (Tr. 396). Dr. Bradford concluded Plaintiff's activity restrictions included bending, climbing, driving, grasping, kneeling, no lifting over ten pounds, operating equipment, operating machinery, pulling, reaching, pushing, no sitting for long periods of time, squatting, and no standing for long periods of time. (Tr. 396).

Due to Plaintiff's allegations of back pain, Dr. Bradford ordered a lumbar spine x-ray, which suggested degenerative disc disease. (Tr. 404).

On a Medical Source Statement of Ability to Do Other Work-Related Activities (Physical), Dr. Bradford indicated that due to numbness in Plaintiff's hands and feet, he could sit a total of eight hours a day for two hours at a time without interruption; stand for a total of six hours in an eight-hour workday for one hour at a time; and walk a total of three hours in an eight-hour workday for one hour at a time without interruption. (Tr. 398). Plaintiff could use both hands frequently; never use his feet for operation of foot controls; and never perform postural functions. (Tr. 399). He could continuously tolerate exposure to humidity, wetness, vibrations, and noise; frequently tolerate exposure to dust odors, fumes, and pulmonary irritants; and never tolerate exposure to unprotected heights, moving mechanical parts, and extreme cold or heat; and never operate a motor vehicle. (Tr. 401).

**ALJ Decision**

On January 24, 2012, the ALJ found Plaintiff had the severe impairments of diabetic peripheral neuropathy, degenerative joint disease of the lumbar spine, and adjustment disorder with anxiety and depressed mood. (Tr. 14). The ALJ further found Plaintiff had the RFC to perform a range of sedentary work with the following limitations: he can lift, carry, push, and/or pull a maximum of ten pounds; can sit for six hours and stand and/or walk for two hours in an eight-hour workday with normal breaks; he cannot climb ladders, ropes, or scaffolds; can occasionally do tasks that require fingering and feeling bilaterally; he is limited to simple, routine, low-stress tasks where there are no high production quotas; and can perform work with no more than superficial interaction with supervisors, coworkers, or the public and without tasks that require arbitration, negotiation, confrontation, directing work of others, or responsibility for the safety of others. (Tr. 16).

Based on VE testimony, the ALJ found Plaintiff could perform work as a charge account clerk, surveillance system monitor, and weight tester; thus, he found Plaintiff was not disabled. (Tr. 21).

STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings

"as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

### STANDARD FOR DISABILITY

Eligibility for SSI and DIB is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process – found at 20 C.F.R. §§ 404.1520 and 416.920 – to determine if a claimant is disabled:

1.  Was claimant engaged in a substantial gainful activity?

2.  Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3.  Does the severe impairment meet one of the listed impairments?

4.  What is claimant's residual functional capacity and can claimant perform past relevant work?

5.  Can claimant do any other work considering his residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work

in the national economy. *Id.* The court considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is he determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f) & 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

### DISCUSSION

Plaintiff asserts substantial evidence does not support the ALJ's credibility and RFC findings. Specifically, he argues the RFC was flawed because the ALJ improperly relied on outdated medical evidence, failed to assign weight to consultative examiner Dr. Bradford, and failed to discuss certain portions of Dr. Leach's assessment. (Doc. 12, at 7-10). Plaintiff also argues the ALJ's step five finding was "based on an incomplete credibility analysis and improperly supported [VE] testimony." (Doc. 12, at 10).

### *Credibility*

A claimant's subjective complaints can support a claim for disability, but there must also be objective medical evidence in the record of an underlying medical condition. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003). Further, "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Id.* at 476 (citations omitted). On review, the Court is to "accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying." *Id.* (citation omitted). Still, an ALJ's decision to discount a claimant's credibility "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the

9

weight the adjudicator gave to the individual's statements and the reasons for that weight." Social Security Ruling (SSR) 96-7p, 1996 WL 374186, *2.  In reviewing an ALJ's credibility determination, the Court is "limited to evaluating whether or not the ALJ's explanations for partially discrediting [Plaintiff's testimony] are reasonable and supported by substantial evidence in the record." *Jones*, 336 F.3d at 476.

An ALJ is not bound to accept as credible Plaintiff's testimony regarding symptoms. *Cohen v. Sec'y of Dep't of Health & Human Servs.*, 964 F.2d 524, 529 (6th Cir. 1992).  Analysis of alleged disabling symptoms turns on credibility. *See Hickey-Haynes v. Barnhart*, 116 F. App'x 718, 726-27 (6th Cir. 2004). "Because of their subjective characteristics and the absence of any reliable techniques for measurement, symptoms (especially pain) are difficult to prove, disprove, or quantify." SSR 82-58, 1982 WL 31378, *1. In evaluating credibility an ALJ considers certain factors:

(i) [A claimant's] daily activities;

(ii) The location, duration, frequency, and intensity of [a claimant's] pain or other symptoms;

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate [] pain or other symptoms;

(v) Treatment, other than medication, [a claimant] receive[s] or ha[s] received for relief of [] pain or other symptoms;

(vi) Any measures [the claimant] ha[s] used to relieve pain or other symptoms; and

(vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3); 416.929(c)(3).

10

Here, the ALJ met his regulatory duty and provided overwhelming support for his credibility finding. For example, the ALJ found Plaintiff's allegations of non-compliance due to financial restraint only partially credible because Plaintiff was compliant with a diabetic diet, resulting in a 180 pound weight loss; and when Plaintiff resumed treatment in 2011, he admitted to not taking his insulin as prescribed, not taking blood glucose levels, and missing scheduled podiatry appointments. (Tr. 17-18, *referring to* 305-06-314-15, 406-27, 457-67). The ALJ also discussed Plaintiff's limited treatment history and objective examination findings which were inconsistent with his claims of limitation. (Tr. 17-18, *referring to* 335-39, 389-92).

Substantial evidence supports the ALJ's credibility finding. Concerning daily activity Plaintiff was able to wash dishes, cook, clean, shop, perform light yard work, maintain self-care, and read. (Tr. 241, 335, 411, 413-14).   Despite complaints of severe limitation, Plaintiff consistently had a normal gait, no muscle atrophy, and normal posture, station, and strength. (Tr. 336, 390, 394-95). In addition, by 2011, Plaintiff said he "usually work[ed] out daily", despite a recent hiatus due to a neck abscess; he was continually diagnosed with diabetes, *without complication*; and he reported no diabetic symptoms. (Tr. 408, 411, 465) (emphasis added).

Even more, the limitations assessed by both consultative examiners were based on subjective complaints. For example, Dr. Sioson found no objective findings to support restriction from work-related activity; however, when considering Plaintiff's allegation of pain on range of motion, he found Plaintiff would be limited to sedentary activities. (Tr. 336). Similarly, Dr. Bradford's objective findings revealed normal strength, range of motion, grasp, and fine coordination in Plaintiff's cervical spine, legs, shoulders, wrists, hips, ankles, knees, feet, elbows, and fingers, with no muscle atrophy and a normal gait. (Tr. 389-92, 394-95). However, when Dr. Bradford considered Plaintiff's subjective complaints of numbness and tingling, she

11

provided a slightly more restrictive assessment that Dr. Sioson; an assessment which the ALJ reasonably chose to discount due to Dr. Bradford's objective findings. (Tr. 17, 389-96, 398-401).

**RFC**

A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1). An ALJ must consider all symptoms and the extent to which those symptoms are consistent with the objective medical evidence. § 416.929. An ALJ must also consider and weigh medical opinions. § 416.927. When a claimant's statements about symptoms are not substantiated by objective medical evidence, the ALJ must make a finding regarding the credibility of the statements based on consideration of the entire record. SSR 96-7p, 1996 WL 374186, *1. The Court may not "try the case de novo, nor resolve conflicts in evidence". *Gaffney v. Bowen*, 825 F.2d 98, 100 (6th Cir. 1987).

Plaintiff argues the ALJ's RFC finding was flawed because he relied on Dr. Sioson's "outdated" opinion, the ALJ failed to assign weight to consultative examiner Dr. Bradford; and he failed to indicate "what part of Dr. Leach's assessment was not being given great weight." (Doc. 12, at 9).

Simply put, the ALJ's RFC is supported by substantial evidence and he considered all medical opinions appropriately under the regulations. First, Dr. Sioson's consultative examination took place August 13, 2009; well within the alleged onset period beginning August 1, 2009. Thus, Dr. Sioson's opinion was clearly not outdated. Moreover, as the ALJ pointed out, Dr. Sioson's findings were consistent with Dr. Bradford's 2011 objective findings. (Tr. 17). Contrary to Plaintiff's assertion, the ALJ did explain his treatment of Dr. Bradford's opinion, i.e., that her objective findings were generally consistent with Dr. Sioson's. While Plaintiff complains the ALJ erred by not discussing Dr. Bradford's more restrictive limitations, there was simply no

legal requirement for him to do so. Indeed, an ALJ is not required to explain each limitation or restriction he adopts or, conversely, does not adopt from a consultative examiner's opinion. While an ALJ must consider medical opinions, the RFC determination is expressly reserved to the Commissioner. *Ford v. Comm'r of Soc. Sec*., 114 F. App'x 194, 198 (6th Cir. 2004); 20 C.F.R.§§ 404.1527(e)(2), 404.1546, 416.927, and 416.945(a)(1).

The ALJ's assessment of Dr. Leach's opinion regarding mental limitations was equally supported by substantial evidence. As the ALJ pointed out, despite Plaintiff's claims of memory problems since 2004, he was able to work at the Post Office until he was laid off in 2009. (Tr. 18). Moreover, the ALJ appropriately noted Plaintiff had never received psychiatric treatment. (Tr. 18). Notably, Dr. Leach found Plaintiff had mild to moderate limitations in mental functioning, which the ALJ adopted as part of his RFC. (Tr. 18-19). Again, to the extent Plaintiff argues the ALJ erred by failing to discuss each and every limitation provided in Dr. Leach's opinion, he is incorrect. Accordingly, the ALJ's RFC is supported by substantial evidence and Plaintiff's arguments are without merit.

### Step Five

Finally, Plaintiff argues the ALJ erred at step five by not adopting Dr. Bradford's limitations into the hypothetical and, pursuant to *Hall v. Bowen*, 837 F.2d 272 (6th Cir. 1988), it was "questionable" whether the VE identified work which existed in substantial numbers. (Doc. 12, at 10-12).

Concerning Dr. Bradford's limitations, an ALJ is only required to incorporate those limitations into his RFC or hypothetical question to the VE that he finds credible. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). Thus, the ALJ was permitted to devise an RFC posed as a hypothetical based on his consideration of medical opinions in the

record. As noted above, the ALJ's treatment of the medical opinions was appropriate and his RFC was supported by substantial evidence. Therefore, the ALJ did not err at step five with respect to his hypothetical to the VE.

At step five, the Commissioner has the burden to show, considering a claimant's age, education, and work experience, that jobs exist in significant numbers in the national economy which claimant can perform. 20 C.F.R. § 416.969; *Hall*, 837 F.2d at 272 . Under the Regulations, "work exists in the national economy when it exists in significant numbers either in the region where [the claimant] live[s] or in several other regions of the country." 20 C.F.R. § 416.966(a). There is no bright-line boundary separating a "significant number" from an insignificant numbers of jobs. *Hall*, 837 F.2d at 275 (6th Cir. 1988).

*Hall* generally directs the Court to exercise "common sense" when determining whether the number of jobs available regionally and nationally constitute a "significant number" of jobs. *See*, *Hall*, 837 F.2d at 275 ("The decision should ultimately be left to the trial judge's common sense in weighing the statutory language as applied to a particular claimant's factual situation.").

Here, based on VE testimony, the ALJ found Plaintiff could perform work as a change account clerk, surveillance system monitor, and weight tester. (Tr. 21). In sum, the VE testified there were 850 jobs in Northeast Ohio, 2,800 jobs in Ohio, and 82,000 jobs in the national economy. (Tr. 21, 56-57). Thus, to find for Plaintiff, this Court would have to declare these job numbers insignificant as a matter of law. However, case law supports the contrary. *Geiger v. Apfel*, 2000 U.S. App. LEXIS 16213, at *6 (6th Cir.) (affirming ALJ's step five determination where 75,000 jobs existed nationwide); *Hall*, 837 F.2d at 275 (affirming ALJ's step five determination where 1,350 – 1,800 jobs existed regionally); *but see West v. Chater,* 1997 WL 764507, at *2–3 (S.D. Ohio) (as a matter of law, 100 jobs in the local economy is not

14

significant), *and Waters v. Secretary of Health and Human Servs.,* 827 F. Supp. 446, 448–50 (W.D. Mich. 1992) (1,000 jobs in the state of Michigan not significant).

There is simply no authority to suggest 850 jobs regionally and 82,000 nationally is insufficient or insignificant. Accordingly, the undersigned finds the ALJ's decision at step five is supported by substantial evidence.

### CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision denying DIB and SSI benefits is supported by substantial evidence. The undersigned therefore recommends the Commissioner's decision be affirmed.

 s/James R. Knepp II
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).